Richard L. Bolton, Esq.
Boardman & Clark, LLP
1 South Pinckney Street, 4th Floor
P.O. Box 927
Madison, WI 53701-0927
Telephone: (608) 257-9521
Facsimile: (608) 283-1709
Email: rbolton@boardmanclark.com
(Pro Hac Vice Pending)

Martin S. King, Esq.
Reid J. Perkins, Esq.
Worden Thane P.C.
111 North Higgins, Suite 600
P.O. Box 4747
Missoula, MT 59806
Telephone: (406) 721-3400
Facsimile: (406) 721-6985
Email: mking@wthlaw.net
Email: rperkins@wthlaw.net

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., a Wisconsin non-profit corporation<br><br>Plaintiff,<br><br>vs.<br><br>CHIP WEBER, Flathead National Forest Supervisor, UNITED STATES FOREST SERVICE, An Agency of the United States Department of Agriculture<br><br>Defendants. | Cause No. _____<br><br>**COMPLAINT** |

The plaintiff, Freedom From Religion Foundation, Inc., alleges as its Complaint:

Complaint                                        1

1. This is an action by plaintiff brought against the defendant alleging violation of the Establishment Clause of the First Amendment to the United States Constitution.

2. The plaintiff seeks a declaration under 28 U.S.C. §2201 that the continued authorization to put a six-foot tall statue of Jesus Christ in the Flathead National Forest, on a 25 by 25 foot plot of land owned and administered by the United States Forest Service, violates the Establishment Clause of the First Amendment to the Constitution of the United States. Plaintiff further requests the Court to enjoin the defendant from continuing to allow the statue of Jesus Christ, a patently religious figure, to remain on land owned and administered by the Forest Service.

3. The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §1331. The Court also has the authority to issue a declaratory judgment under 28 U.S.C. §2202. The Court further has the authority to order injunctive relief under 28 U.S.C. §1343 and F.R.C.P. 65.

4. Venue is appropriate in the District Court for the District of Montana, pursuant to 28 U.S.C. §1391, because the defendant resides within this judicial district and because the actions giving rise to the claims occurred within the district.

5. The United States has waived sovereign immunity pursuant to 5 U.S.C. §702.

6. The plaintiff, Freedom From Religion Foundation, Inc. ("FFRF"), is a non-profit corporation organized under the laws of the state of Wisconsin that advocates for the separation of church and state and educates on matters of non-theism.

7. FFRF has more than 17,000 members, residing in every state of the United States and the District of Columbia, including more than 100 members in the State of Montana.

8. FFRF represents and advocates on behalf of its members throughout the United

**Complaint**                                2

States.

9. FFRF's membership includes individuals who have had direct and unwanted exposure to the statue of Jesus Christ in the Flathead National Forest, and such members will have direct and unwelcome exposure to the statue of Jesus in the future, as frequenters of the Flathead National Forest, more specifically at the location on Big Mountain, near Whitefish Mountain Resort's Chair Two, site of the Jesus statue; other members of FFRF have altered their conduct to avoid Big Mountain because of the Jesus statue.

10. The defendant, Chip Weber, is the Forest Supervisor for the Flathead National Forest, with a principal office located at 650 Wolfpack Way, Kalispell, Montana 59901.

11. The defendant's office is located within the geographic authority of the District Court for the District of Montana.

12. The defendant is an employee of the United States Forest Service, an agency of the United States Department of Agriculture; he has been authorized and delegated authority to take the actions complained of in his official capacity.

13. Tom Tidwell is the United States Forest Service Chief.

14. Tom Vilsack is the Secretary of the United States Department of Agriculture.

15. The United States Forest Service manages public lands owned and administered by the United States.

16. The Flathead National Forest is owned and administered by the United States Forest Service.

17. The Flathead National Forest, including Big Mountain, lies in the heart of the Rocky Mountains, west of the Continental Divide and just south of the Canadian border.

18. The Flathead National Forest is a premier destination for visitors looking to

experience natural landscapes of the American West, according to the Forest Service.

19. Despite the fact that Big Mountain was, and remains, owned and administered by the United States Forest Service, the Knights of Columbus applied for a permit to erect a religious shrine overlooking the Big Mountain ski run, in 1953.

20. The Knights of Columbus application stated that the applicant "proposes to erect a Statue of our Lord Jesus Christ" on public land owned by the Forest Service.

21. The idea for a shrine at the top of a ski run originated with requests from Catholic skiers for such a religious shrine; the Knights of Columbus then pushed the idea forward to eventual dedication on Big Mountain, as reported in contemporaneous sources.

22. The Knights of Columbus is an exclusively Roman Catholic organization for which "church-related activities are central to our [its] work as an organization of Catholic laymen."

23. Membership in the Knights of Columbus is limited to practicing male Catholics who "accept the teaching authority of the Catholic church on matters of faith and morals, aspire to live in accord with the precepts of the Catholic church, and are in good standing in the Catholic church."

24. The Knights of Columbus has placed religious shrines at locations throughout the United States, including on its own extensive real estate holdings.

25. The Forest Service granted the application of the Knights of Columbus on October 15, 1953, authorizing the Knights to erect a religious shrine on public land without payment.

26. The Forest Service has continued thereafter to sanction without payment the prominent presence of the six-foot statue of Jesus Christ overlooking the Big Mountain ski run since 1954.

27. As recently as February 3, 2000, the Forest Service authorized the Knights of Columbus to continue "to provide a site for a religious shrine" on Big Mountain.

28. After objection by FFRF to the Forest Service's authorization of a religious shrine on public land, however, the defendant determined in 2011 that the placement of the statue of Jesus Christ on Big Mountain is indeed inappropriate and must be removed.

29. The Forest Service decision on August 24, 2011, "had to do with the large number of Supreme Court decisions and recent case law that set the precedent regarding monuments with religious themes or icons with religious themes."

30. The defendant decided after careful consideration that authorization of a religious shrine conflicted with Supreme Court decisions prohibiting such religious displays on public land.

31. The defendant concluded in his decision letter of August 24, 2011, that the statue of Jesus Christ should be removed from public land no later than October 31, 2012.

32. The defendant immediately faced criticism from religious groups; supporters of the religious shrine on Big Mountain tried to overwhelm the defendant with opposition to his decision, including intense lobbying by United States Representative Denny Rehberg, replete with public rallies at the base of the Jesus statue.

33. Mr. Weber gave in to the pressure exerted by advocates of the Christ statue, and on October 21, 2011, the defendant withdrew his earlier decision of August 24, 2011, and announced plans by the Forest Service to formally assess public sentiment for re-authorizing the religious shrine on Big Mountain.

34. Representative Rehberg applauded the defendant's about-face, noting that "public outcry from the community -- and the entire country -- can be a remarkable lubricant for getting the wheels of government turning."

35. The defendant's capitulation to supporters of the Christ statue followed with unconvincing rationales being advanced by the Forest Service to justify the continued presence of this religious shrine on public property.

36. In the defendant's letter of October 21, 2011, withdrawing his earlier decision, Mr. Weber referred to "new information" indicating that the Jesus statue is eligible for listing on the National Historic Register.

37. The Forest Service, however, actually first suggested the "new information," to the Montana State Historic Preservation Office, in a letter dated September 1, 2011, wherein the Forest Service requested that the Montana Historic Preservation Office "concur" in a statement that the statue of Jesus was eligible for listing on the National Register of Historic Places.

38. The Forest Service letter of September 1, 2011, candidly describes the religious history of the shrine at issue:

> The statue was emplaced on Big Mountain and dedicated on September 5, 1954, by the Knights of Columbus (K of C). The Knights chose to put a shrine in the area after being approached by Winter Sports, Inc. (WSI) and some participants in the 1949 and 1951 National Ski Championships, which took place at Big Mountain. Many of the skiers were veterans of the fighting in Europe in WWII, where they observed many such shrines and thought there should be one here as well. The statue is located on FS-administered lands under a Special Use Permit first issued to the K of C in 1953 for a spot of ground measuring 25 feet by 25 feet. According to the permit application, the Knights wished to "erect a shrine overlooking Big Mountain ski run." A committee was formed, led by L. J. Reed, to select a site and design a shrine and then have it erected. Other members of the committee were Frank Davis, Wayne Dirkson, Charles Smith, Ed Lyonais, Kenneth O'Brien, Bud Drew, Curtiss Barnhardt, Fred Dennis, Charles Rogers, Tony Hecimovitch, and Father Cronin. The Knights first approached Winter Sports about placing the shrine within the Village, but after being turned-down by WSI, they turned to the Forest Service for a permit to place the shrine near the top of the ski runs. The final location was chosen because of its spectacular views over the valley below and for its proximity to the original

main lift and run.

39. The Forest Service letter to the Montana Historic Preservation Office further acknowledges that monuments and religious properties are not eligible for listing on the National Register of Historic Places if associated with important persons or events or religious values: "The statue of Jesus cannot be considered eligible for its association either with the soldiers who fought in WWII, nor for its association with Jesus."

40. The Forest Service, therefore, proposed to the Montana Historic Preservation Office that the statue be deemed to have no association with Jesus or WWII veterans.

41. The Forest Service suggested instead that the Jesus statue be re-characterized as something other than a religious shrine or a war memorial.

42. Following the lead of the Forest Service, the Montana State Historic Preservation Office "concurred" that the Jesus shrine "is not believed to be a religious site because unlike Lourdes or Fatima, people do not go there to pray."

43. Advocates of the religious shrine then responded zealously to the Forest Service's request for public comment, with the American Center for Law and Justice, a conservative Christian advocacy organization, submitting more than 70,000 names of supporters; Representative Rehberg also submitted approximately 10,000 comments he solicited through his "VeteransJesus.com" website.

44. The defendant also received many comments opposing religious monuments on public land, including from FFRF.

45. The defendant subsequently tallied up the support for the Jesus shrine and issued a new decision on January 31, 2012; the defendant's written decision principally rejected non-existent environmental issues that no one had raised.

46. The defendant's decision reauthorized the special use permit to the Knights of Columbus so as to maintain "a statue of Jesus Christ located on National Forest land near the top of Chair #2 within the Whitefish Mountain Resort permit boundary."

47. The defendant omitted from his decision any discussion or explanation of the Supreme Court precedent prohibiting religious monuments on public land, which decisions he previously relied on as the basis for non-renewal of the Jesus permit.

48. The self-executing prohibitions of the Establishment Clause, in fact, are not contingent on public opinion polls orchestrated by federal officials as to whether to obey the Constitution.

49. The continued presence of the Jesus shrine on Forest Service property, therefore, violates the Establishment Clause of the First Amendment to the United States Constitution by giving the appearance of the government's endorsement of Christianity in general, and Roman Catholicism, in particular; the defendant's actions also diminish the civil and political standing of non-religious and non-Christian Americans and constitutes governmental preference for religion and Christianity.

50. The continued presence of the statue of Jesus Christ, intended as a religious shrine, gives the unmistakable appearance of governmental endorsement of religion, as does the defendant's orchestrated justification for maintaining a religious monument on public land.

51. The presence of a religious shrine on federal property constitutes governmental approval of an inherently religious message.

52. The actions of Mr. Weber, in perpetuating a religious shrine on federal property, give the public appearance of government endorsement of religion, including an unmistakable symbolic link between the government and religion.

53. The defendant's actions violate the fundamental principle of the separation of church and state by impermissibly advancing, endorsing and promoting the establishment of religion in violation of the United States Constitution.

54. The actions of Mr. Weber in contriving to justify the Jesus shrine on federal property, in response to public opinion, further violates and makes a sham of the Establishment Clause protections.

55. The Establishment Clause prohibits governmental endorsement of religion, even on a majoritarian basis; the Establishment Clause protects the liberty of conscience of minorities, including the consciences of non-believers, who constitute at least 15% of the United States population.

56. The Establishment Clause, moreover, is violated by governmental endorsement of religion even in respect to religious shrines of longstanding on public lands.

57. The plaintiff, FFRF, for its part, includes members who are non-believers opposed to such government endorsement of religion.

58. Members of FFRF include persons who would have standing individually to object to the defendant's endorsement of religion in this case, based upon their past and prospective exposure to the figure of Jesus Christ on Forest Service property, as well as based on the decisions of individual members of FFRF to forego activities on Big Mountain in order to avoid the Jesus shrine.

59. The actions of the defendant in violating the Establishment Clause are injurious to the interests of the plaintiff FFRF, and to its members, and warrant relief from the Court.

WHEREFORE, the plaintiff demands judgment as follows:

A. Declaring that the religious shrine, including a statue of Jesus Christ, on United

States Forest Service property violates the Establishment Clause of the United States Constitution;

B.   Ordering the defendant to withdraw approval for the Knights of Columbus to keep a religious shrine with a statue of Jesus Christ on Forest Service property;

C.   Ordering the defendant to direct the Knights of Columbus to remove the religious shrine from Forest Service property;

D.   Awarding plaintiff its reasonable costs and disbursements of this action, as allowed by law; and

E.   Ordering such further relief as the Court deems just and equitable.

Dated this 8th day of February, 2012.

Martin S. King, Esq.
Reid J. Perkins, Esq.
Worden Thane P.C.
111 North Higgins, Suite 600
P. O. Box 4747
Missoula, MT  59806
Telephone:  (406) 721-3400
Facsimile:   (406) 721-6985

Richard L. Bolton, Esq.
Boardman & Clark LLP
1 South Pinckney Street, 4th Floor
Madison, WI  53701-0927
Telephone:  (608) 257-9521
Facsimile:   (608) 283-1709

Attorneys for the Plaintiff

F:\DOCS\WD\99999\66\A1338530.RTF

Complaint                                                         10