IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED
MAY 29 2012
PATRICK E. DUFFY, CLERK
By_____
DEPUTY CLERK, MISSOULA

| | |
|---|---|
| Freedom From Religion Foundation, Inc., *Plaintiff*, v. Chip Weber, Flathead National Forest Supervisor; and United States Forest Service, an Agency of the United States Department of Agriculture, *Defendants*. | Case No. 9:12-cv-19-DLC |

## BRIEF IN SUPPORT OF MOTION TO INTERVENE

For nearly sixty years, the Knights of Columbus (Kalispell Council 1328) (the "Knights") have held a special-use permit from the United States Forest Service to maintain a war memorial on Big Mountain in the Whitefish Mountain Resort Ski Area. The memorial honors World War II veterans from the 10th Mountain Division, who served in the Alps of France, Switzerland, and Italy. The Knights erected the memorial in 1954 after they were approached by veterans from the 10th Mountain Division who had participated in the 1949 and 1951 National

Ski Championships at Big Mountain and wanted to commemorate their fallen comrades with a statue that evoked memories of the many religious shrines and statues they had seen in the mountain communities of Europe. Since that time the Knights, including individual proposed Intervenors William Glidden, Raymond Leopold, Eugene Thomas, and Norman DeForrest, have continuously maintained the monument, repainting it, repairing it, and otherwise taking care of it.

Plaintiff Freedom From Religion Foundation ("FFRF") has sued Defendants United States Forest Service and Chip Weber (collectively, the "Forest Service") in an effort to have the Knights' permit revoked. Intervenors seek to the retain the permit and the statue, and therefore oppose FFRF's lawsuit. As the real parties in interest, Intervenors now move for leave to intervene as of right under Fed. R. Civ. P. 24(a). Alternatively, Intervenors seek permissive intervention under Rule 24(b). FFRF has consented to the motion. The Forest Service and Chip Weber have not yet taken a position on the motion, but have indicated that after the motion is filed they will likely file a statement of non-opposition asserting that they take no position on the motion.

## BACKGROUND

*Proposed Intervenors.*

The Knights of Columbus is the largest Catholic laymen's organization with approximately 1.7 million members in a dozen countries. *See* Exhibit A, Glidden Decl. ¶ 3. The Knights have approximately 5400 members in Montana, including over 100 who are members of the Kalispell Council. *Id.* ¶ 4. If the permit is terminated and the statue removed as a result of this lawsuit, the Knights' interest in visiting and maintaining the memorial will be harmed. *Id.* ¶ 26.

William Glidden is a resident of the town of Kalispell, Montana, and the Grand Knight of the Knights of Columbus (Kalispell Council 1328). *Id.* ¶ 2. The "Grand Knight" is the highest office within an individual Council of the Knights of Columbus. *Id.* Glidden seeks to maintain the statue as a memorial designed to honor our Nation's veterans. *Id.* ¶ 17. If the permit is terminated and the statue removed as a result of this lawsuit, Glidden's interest in visiting and maintaining the memorial will be harmed. *Id.* ¶ 26.

Raymond Leopold is a resident of Flathead County, Montana, between Kalispell and Whitefish, and a member of Knights of Columbus (Kalispell Council 1328). Exhibit B, Leopold Decl. ¶¶ 2-3. Leopold has

frequently visited the statue to make repairs to and maintain the statute. *Id.* ¶¶ 9-24. If the permit is terminated and the statue removed, Leopold's interest in visiting and maintaining the memorial will be harmed. *Id.* ¶¶ 29-31, 35.

Gene Thomas is a resident of Kalispell, Montana and a member of the Knights of Columbus (Kalispell Council 1328). Exhibit C, Thomas Decl. ¶¶ 2-3. Thomas has helped to maintain the statue for over 40 years as a way of honoring fallen soldiers and as a service to the community. *Id.* ¶ 20. If the permit is terminated and the statue removed, Thomas's interest in visiting and maintaining the memorial will be harmed. *Id.* ¶ 21.

Norman DeForrest is a resident of Kalispell, Montana and a member of Knights of Columbus (Kalispell Council 1328). Exhibit D, DeForrest Decl. ¶¶ 2-3. DeForrest has repainted the statue, and has otherwise helped to maintain it. *Id.* ¶¶ 4-8. DeForrest seeks to maintain the statue both as a way of honoring the fallen and as a cultural artifact. *Id.* ¶¶ 9-12. If the permit is terminated and the statue removed, DeForrest's interest in visiting and maintaining the memorial will be harmed. *Id.* ¶¶ 13-14.

4

### *The statue.*

In the early 1950s, several veterans from the United States Army's 10th Mountain Division who had participated in the 1949 and 1951 National Ski Championships at Big Mountain approached the Knights about creating a mountain memorial to their comrades who had fallen in World War II. Exhibit A, Glidden Decl. ¶ 5. In September 1953, the Knights applied for a special use permit from the United States Forest Service to place the memorial on a plot of land in the Flathead National Forest overlooking the Big Mountain ski run. *Id.* ¶¶ 6-7. The permit was granted approximately one month later. *Id.* ¶¶ 8-9. In the next year, the Knights commissioned a statue representing Jesus Christ to be erected on the property. *Id.* ¶ 10.

A plaque placed near the statue by the owners and operators of the Whitefish Mountain Resort contains the following inscription:

> When the troops started returning from WWII in Europe to their home in the Flathead Valley they brought with them many memories ... some good, some bad. Some of these troops were members of the Knights of Columbus at St. Matthew's Parish in Kalispell. A common memory of their time in Italy and along the French and Swiss border was of the many religious shrines and statues in the mountain communities. This started a dialogue with the U.S. Forest Service for leased land to place this statue of Jesus. On October 15, 1953 the U.S. Forest Service granted a permanent special use permit to the K of C Council #1328 for a 25ft x 25ft square for placement of the statue. A commission for the

5

> statue construction was given to St. Paul Statuary in St. Paul, Minnesota. The statue was installed in 1955 and has been maintained by the Knights of Columbus from St. Matthew's ever since. We thank those brave troops that brought this special shrine of Christ to the Big Mountain and hope that you enjoy and respect it. – Whitefish Mountain Resort, 2010

*Id.* ¶ 18.

The statue has remained in the same location near the top of Chair 2 at the Whitefish Mountain Resort for 58 years. The Knights have maintained the statue over the years, repainting it and performing minor repairs. *Id.* ¶ 11. Members of the Knights, including the individual Intervenors, frequently visit the statue to maintain it and remember and honor the sacrifices of service members on behalf of all Americans during World War II. *Id.* ¶ 15; Exhibit B, Leopold Decl. ¶¶ 9-13, 21-23; Exhibit C, Thomas Decl. ¶¶ 6-15, 20; Exhibit D, DeForrest Decl. ¶¶ 4-8, 11. Other members of the Kalispell community, as well as visitors to the Whitefish Mountain Resort, frequently visit the site of the statue when skiing or hiking on the mountain. Exhibit A, Glidden Decl. ¶ 16. Thus, Intervenors seek to maintain the statue as a memorial designed to remember and honor fallen service members and veterans. *Id.* ¶ 17; Exhibit B, Leopold Decl. ¶¶ 30-31; Exhibit C, Thomas Decl. ¶¶ 17-20; Exhibit D, DeForrest Decl. ¶ 13. They also seek to maintain the statue as

6

an important artifact of Montana and Kalispell history, and view their maintenance of the statue as a form of service to Kalispell, Montana, and the Nation. Exhibit A, Glidden Decl. ¶ 17.

### *The present conflict.*

In 1990 and 2000, the Knights applied for and received 10-year renewals of their permit. When the Knights again sought renewal in 2010, however, the Forest Service objected. *Id.* ¶ 19. In a private meeting with the Knights, Forest Service official Chip Weber and others indicated that they feared the risk of litigation and thus wanted the Knights to move the statue. *Id.* ¶ 20. Although the Knights could not agree that the statue should be removed, they consulted an engineer who confirmed that the statue could not be moved without damaging or destroying it. *Id.* ¶ 21. On August 24, 2011, after the Knights declined to remove the memorial, the Forest Service announced that it would not renew the Knights' permit and that that the statue would have to be removed by December 31, 2011. *Id.* ¶¶ 23-24.

In the meantime, the Forest Service's local archaeologist, Timothy Light, contacted the Montana State Historic Preservation Office about the possibility of having the statue listed on the National Register of Historic Places. Exhibit E, Baxter Decl. ¶ 2. Mr. Light's letter noted

that the statue represented "part of the history of the ski area" and was "associated with events important to local history." *Id.* ¶ 2 & Ex. 1 thereto. His letter further noted that "[m]oving the statue would be an adverse effect to the integrity of the setting and location" and that "the setting, with its grand views of the valley and proximity to Chair 2, is an important aspect to the site's historic integrity." *Id.*

The Montana Historical Society responded by sending a letter to the Forest Service stating that the statue had "long been part of the historic identity of the area." *Id.* ¶ 3 & Exhibit 2 thereto. Furthermore, it concluded that the statue was "not believed to be a religious site because unlike Lourdes or Fatima, people do not go there to pray, but it is a local land mark that skiers recognize, and it is a historic part of the resort." *Id.*

Apparently based on this understanding, on October 21, 2011, the Forest Service withdrew its earlier decision denying the permit and announced its plans to "formally seek public comment on a proposed action for reissuing the permit in the next few weeks." *Id.* ¶ 4 & Ex. 3 thereto. Around 95,000 comments were submitted by members of the public, overwhelmingly in favor of allowing the memorial stand. Finally, on January 31, 2012, the Forest Service issued the Knights a permit,

8

reauthorizing their use of the 25' x 25' plot of land for an additional ten-year period, because "[t]he statue has been a long standing object in the community since 1953 and is important to the community for its historical heritage." *Id.* ¶ 5 & Ex. 4 thereto. FFRF's lawsuit now seeks to strip Intervenors of their ability to maintain the memorial. Intervenors seek intervention to defend their rights under the permit.

## STANDARD OF REVIEW

In evaluating a motion to intervene, district courts are "required to accept as true the non-conclusory allegations" made by the proposed intervenor. *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001). "In determining whether intervention is appropriate, courts are guided primarily by practical and equitable considerations." *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010). While the potential intervenor bears the burden to demonstrate intervention conditions are satisfied, *United States v. Lyon*, No. CV F 07–0491 LJO MJS, 2011 WL 1810322 at *3 (E.D. Cal. 2011), "the requirements for intervention are broadly interpreted in favor of intervention." *Aerojet*, 606 F.3d at 1148.

# ARGUMENT

## I. Proposed Intervenors should be granted intervention as of right.

Fed. R. Civ. P. 24(a)(2) permits intervention as of right if: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use* v. *Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). These requirements "are broadly interpreted in favor of intervention." *Id.* The court's review is also "guided primarily by practical considerations, not technical distinctions." *Id.*

As demonstrated below, proposed Intervenors meet each of the four criteria and should be allowed to intervene as a matter of right.

### A. Proposed Intervenors' motion to intervene is timely.

In determining whether a motion to intervene is timely, the court considers (1) the stage of the proceeding, (2) the prejudice to other parties, and (3) the reason for and length of the delay. *Day* v. *Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007). The present motion presents no timeliness problems, as it is being filed approximately four months after the

10

complaint was filed and one month after Defendants answered. *Citizens for Balanced Use*, 647 F. 3d at 897 ("Applicants filed their motion to intervene in a timely manner, less than three months after the complaint was filed and less than two weeks after the Forest Service filed its answer to the complaint."); *Berg*, 268 F.3d at 816-818 (agreement that motion to intervene filed five months after first amended complaint was timely); *Wildlands CPR INC. v. U.S. Forest Service*, No. CV 10-104-M-DWM, 2011 WL 578696 at *2 (D. Mont. 2011) (intervention motion timely when filed after case management plan was entered, but before substantive rulings were made).

Moreover, none of the parties could possibly be prejudiced by the timing of intervention. Plaintiff has consented, and the federal Defendants have indicated that they will likely file a statement of non-opposition. Discovery has not yet begun. The pretrial conference will not take place until June 5. Dkt. 7. Because this request is timely and comes during the preliminary stage of this case, Intervenors' request to intervene should be granted. *Citizens for Balanced Use*, 647 F.3d at 897 ("The motion to intervene was made at an early stage of the proceedings, the parties would not have suffered prejudice from the grant of intervention at that early stage, and intervention would not cause disruption or de-

11

lay in the proceedings. These are traditional features of a timely motion.")

### B. Proposed Intervenors have a significant protectable interest in the subject of the action.

Proposed Intervenors are entitled to intervene because FFRF seeks to deny them a permit they have held for more than fifty years.

As a general matter, it is sufficient for a potential intervenor to show that it "will suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011). This threshold inquiry is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* The quintessential protectable interest, however, is when "the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon [the proposed intervenor's] legally protectable interests." *Berg*, 268 F.3d at 818 (citation omitted). Here, Intervenors unquestionably have a protectable interest in this lawsuit, as they seek to intervene to protect their interest in the special use permit they have held, and the statue they have maintained, since 1953, which is directly challenged by this lawsuit.

12

### C. Proposed Intervenors' ability to protect their interests may be impaired by the disposition of this action.

Once a court determines that a proposed intervenor "ha[s] a significant protectable interest," it should have "little difficult concluding that the disposition of th[e] case may, as a practical matter, affect it." *Citizens for Balanced Use*, 647 F.3d at 898. "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Id.* (quoting Fed. R. Civ. P. 24 advisory committee's note); *see also Berg*, 268 F.3d at 822 (stating that Ninth Circuit "follow[s] the guidance of Rule 24 advisory committee notes" on this issue). Here, there is no doubt that if the FFRF prevails, Intervenors will be deprived of the use of their permit. Accordingly, this factor also weighs heavily in favor of granting intervention.

### D. Proposed Intervenors' interests are not adequately represented by the existing parties to the action.

Finally, the Court should allow Intervenors to intervene because the federal Defendants may not adequately represent their interests in this case. The proposed Intervenors' "burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for*

*Balanced Use*, 647 F.3d at 898. Even where an applicant's interests "appear aligned" with an existing party, the applicant "need show only that its interests *might* not be represented, not that its interests are, in fact, not being adequately represented." *Low v. Altus Fin. S.A.*, 44 F. App'x 282, 285 (9th Cir. 2002). "Any doubt as to whether the existing parties will adequately represent the intervenor should be resolved in favor of intervention." *In Def. of Animals v. U.S. Dep't of the Interior*, No. 2:10-cv-01852-MCE-DAD, 2011 WL 1085991 at *3 (E.D. Cal. 2011).

In cases challenging government action, "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173. This is because the government has the broader responsibility of representing the public interest and the government's policy views in general, which may not align with those of the individual right holder. *See, e.g., Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 308 (E.D. Cal. 2011) (private applicant not adequately represented by government agency because applicant's interests were more "narrow and parochial" and

agency was required to consider "impact its rules will have on the state as a whole"); *Delano Farms Co. v. Cal. Table Grape Comm'n*, 1:07-CV-1610, 2010 WL 2942754, at *2 (E.D. Cal. 2010) (no adequacy of representation because "USDA, as an agency of the Executive Branch must balance a number of policy considerations"); *Associated Gen. Contractors of Am. v. Cal. Dept. of Transp.*, 09-01622, 2009 WL 5206722, at *3 (E.D. Cal. 2009) (representation inadequate where applicant had "a personal stake in the program and in the outcome of this lawsuit" and agency's main charge was promoting the public interest). Thus, applicants are not adequately represented by a government agency if the agency's interests are "not simply to confirm" the applicant's interests, but include a broader "range of considerations." *Berg*, 268 F.3d at 823.

The Forest Service's interests here are not "simply to confirm" Intervenors' interest in maintaining and visiting a religiously-inspired war memorial. Rather, the Forest Service must consider its permitting policy in general, the impact a ruling in this case might have on what other applications must be granted, the risk of litigation that might arise in defending a broad permitting policy, and the Administration's overall views regarding the "separation of church and state"—a question inherently infused with political considerations. "Given the [gov-

15

ernment's] multiple considerations, it is not likely that the [government] will ***undoubtedly*** make all the intervener's arguments," as the standard requires. *Berg*, 268 F.3d at 823 (emphasis added).

Indeed, the Forest Service and Intervenors have already conflicted over these issues. The Forest Service initially denied the Knights' permit on the alleged grounds that it would violate the Establishment Clause of the First Amendment to the United States Constitution. Exhibit A, Glidden Decl. ¶ 23-24 & Ex. 3 thereto. In private meetings with the Knights, the Forest Service admitted that its decision was motivated, at least in part, by fear of litigation. *Id.* ¶ 20. And although the Forest Service ultimately reversed its decision, it did so on grounds that the monument was eligible to be listed in National Historic Register, Exhibit E, Baxter Decl. ¶ 5 & Ex. 4 thereto, and after significant public pressure. It has given no indication that it would defend the decision under the Freedom of Speech, Free Exercise, and Establishment Clauses of the First Amendment to the same extent as would Intervenors. These factors satisfy the standard for showing that the Intervenors' interests "*might* not" be adequately represented by the government defendants. *See Low*, 44 Fed. App'x at 285; *see also Associated Gen. Contractors*, 2009 WL 5206722 at *3 (intervention appropriate where the applicants'

"personal stake in the program" had "at times pitted them against" the government agency); *Nat'l Ass'n of Home Builders v. San Joaquin Valley Unified Air Pollution Dist.*, 1:07CV0820LJODLB, 2007 WL 2757995 at *5 (E.D. Cal. 2007) (intervention granted where government's interest may be "motivated by cost and political pressures").

Intervenors are also uniquely situated in this case to provide information and offer arguments from the perspective of the people who erected, maintained, and visit the monument. Additionally, counsel for proposed Intervenors litigate extensively on First Amendment grounds in state and federal courts throughout the country, and thus are capable of presenting information and arguments that may shed additional light on the constitutional issues before the Court. Counsel for the Knights have frequently represented intervenors in Establishment Clause litigation alongside federal, state, and local government entities. *See, e.g., Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007 (9th Cir. 2010) (in Establishment Clause challenge, adopting argument of proposed Defendant-Intervenors).

Finally, permitting intervention will not burden the parties or complicate the case. *See Nat'l Ass'n of Home Builders*, 2007 WL 2757995 at *5 (noting that where issues are largely legal, "it is unlikely that allow-

17

ing Proposed Interveners to submit additional, nonduplicative briefing will result in a burden on [the parties] or a delay in the action").

## II. Alternatively, proposed Intervenors should be permitted to intervene under Rule 24(b).

Even if this Court finds that the proposed Intervenors may not intervene as of right, it should grant permission to intervene in this proceeding. Rule 24(b) authorizes this Court to permit intervention with "an applicant's claim or defense and the main action have a question of law or fact in common." The determination of whether a party will be able to intervene is within the discretion of the court, which will consider whether it will unduly delay the main action or unfairly prejudice the existing parties. Fed. R. Civ. P. 24(b).

Proposed Intervenors easily qualify for permission to intervene in this case. Intervenors' interest in protecting its permit presents common questions of law and fact with those of the existing parties. They do not seek to introduce any new issue, but only to present further legal arguments as to why FFRF lacks standing and why the permit at issue is constitutional. As noted above, this motion is timely and intervention will neither require any change to existing deadlines nor prejudice the current parties. The significance of the proposed Intervenors' interests in the subject matter of this litigation outweighs any marginal addi-

tional burden that would be caused by intervention. *See United States* v. *City of Los Angeles*, 288 F.3d 391, 404 (9th Cir. 2002) (reversing denial of permissive intervention, noting that "'streamlining' the litigation . . . should not be accomplished at the risk of marginalizing those . . . who have some of the strongest interests in the outcome"). Even if the Court concluded that Intervenors cannot intervene as of right, it should nonetheless permit intervention under Fed. R. Civ. P. 24(b).

## CONCLUSION

For the foregoing reasons, proposed Intervenors' motion to intervene should be granted.

Dated: May 29, 2012

Respectfully submitted,

/s/ Charles A. Harball

Charles A. Harball
(Montana Bar No. 2841)
Kalispell, MT 59901
Telephone: (406) 758-7709
Facsimile: (406) 758-7758

Eric C. Rassbach (*pro hac* pending)
Eric S. Baxter (*pro hac* pending)
The Becket Fund for Religious Liberty
3000 K St. NW, Suite 220
Washington, DC 20007
Telephone: (202) 955-0095
Facsimile: (202) 955-0090

*Counsel for Proposed Intervenors*

19

## CERTIFICATE OF SERVICE

I hereby certify that, on May 29, 2012, I caused the foregoing *Brief in Support of Motion to Intervene* to be served via Federal Express on the following:

David B. Glazer
U.S. DEP'T OF JUSTICE
301 Howard Street
Suite 1050
San Francisco, CA 94105

Mark Steger Smith
OFFICE OF THE U.S. ATT'Y
2929 3rd Ave. North, Ste. 400
P.O. Box 1478
Billings, MT 59103-1478

Martin S. King
Reid Perkins
WORDEN THANE
P.O. Box 4747
Missoula, MT 59806-4747
406-721-3400
Fax: 721-6985

Richard L. Bolton
BOARDMAN & CLARK, LLP
1 South Pinckney Street, 4th Floor
P.O. Box 927
Madison, WI 53701-0927

_____
Marie Peralta