IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| Freedom From Religion Foundation, Inc.,<br><br> *Plaintiff,*<br><br> v.<br><br>Chip Weber, Flathead National Forest Supervisor; and<br><br>United States Forest Service, an Agency of the United States Department of Agriculture,<br><br> *Defendants.* | Case No. 9:12-cv-19-DLC |

DECLARATION OF ERIC S. BAXTER

I, Eric S. Baxter, declare under penalty of perjury, as follows:

(1) I am an attorney at the Becket Fund for Religious Liberty and counsel for the proposed Defendant-Intervenors in the captioned matter.

(2) Attached as <u>Exhibit 1</u> is a true and correct copy of a letter obtained from the Forest Service, dated September 1, 2011, and written by Forest Service Archaeologist Timothy Light to Dr. Mark F. Baumler of the Montana State Historic Preservation Office.

(3) Attached as <u>Exhibit 2</u> is a true and correct copy of a letter obtained from the Forest Service, dated September 19, 2011, and written by Josef Warhank of the Montana Historical Society to Timothy Light.

(4) Attached as <u>Exhibit 3</u> is a true and correct copy of a letter obtained from the Forest Service, dated October 21, 2011, written by the Forest Service to William Glidden.

(5) Attached as <u>Exhibit 4</u> is a true and correct copy of a special use permit obtained from the Forest Service and reauthorizing the Knights of Columbus's permit for a statue of Jesus located on National Forest land within the Whitefish Mountain Resort.

I declare under penalty of perjury that the forgoing is true and correct. Executed on May 28, 2012.

*[signature]*

_____
Eric S. Baxter

# EXHIBIT 1


Case 9:12-cv-00019-DLC   Document 22-1   Filed 06/04/12   Page 4 of 18

| United States Department of Agriculture | Forest Service | (406) 758-5200 | Flathead National Forest<br>650 Wolfpack Way<br>Kalispell, MT 59901 |
|---|---|---|---|

**File Code:** 2360
**Date:** 1 September 2011

Dr. Mark F. Baumler, SHPO
State Historic Preservation Office
1410 8th Avenue
P.O. Box 201202
Helena, MT 59620-1202

**Properties affected – SHPO comment required:** Flathead National Forest, Tally Lake Ranger District: Knights of Columbus Special Use Permit Renewal for the Big Mtn religious shrine/Statue of Jesus, Project #11-FH-08-06

Dear Dr Baumler:

The Tally Lake Ranger District of the Flathead National Forest is considering not renewing the Special Use Permit issued to the Knights of Columbus for a religious shrine, a statue of Jesus, located on lands administer by the Forest Service in the Whitefish Mountain Resort. The statue was emplaced on Big Mountain and dedicated on September 5, 1954 by the Knights of Columbus (KofC). The Knights chose to but a shrine in the area after being approached Winter Sports, Inc. (WSI) and some participants in the 1949 and 1951 National Ski Championships which took place at Big Mountain. Many of the skiers were veterans of the fighting in Europe in WWII where they observed many such shrines and thought there should be one here as well. The statue is located on FS-administered lands under a special use permit first issued to the KofC in 1953 for a spot of ground measuring 25 feet by 25 feet. According to the permit application the Knights wished to "erect a shrine overlooking Big Mountain ski run." A committee was formed lead by L.J. Reed to select a site and design a shrine and then have it erected. Other members of the committee were Frank Davis, Wayne Dirkson, Charles Smith, Ed Lyonais, Kenneth O'Brien, Bud Drew, Curtiss Barnhardt, Fred Dennis, Charles Rogers, Tony Hecimovitch, and Father Cronin. The Knights first approached Winter Sports about placing the shrine within the village but after being turned-down by WSI, they turned to the Forest Service for a permit to place the shrine near the top of the ski runs. The final location was chosen because of its spectacular views over the valley below and for its proximity to the original main lift and run.

Site 24FH0082 is a statue of Jesus on a concrete pedestal. The pedestal is six feet tall, five feet on each side at the base and 30 inches at the top. The statue is also six feet high with out-stretched arms measuring 30 inches across. The statue is painted sky blue, dark purple, and flesh. The left hand was missing when the site was documented. On the north and west sides of the statue there is a pole fence to protect the structure and a bronze plaque is just northeast of the statue. The fence is three feet from the statue and measures 20 feet in length. The plaque with a history of the statue measures two feet by three feet and is mounted on a treated pole structure measuring five feet wide and 12 feet high.

Monuments and religious properties are generally not eligible for listing on the National Register of Historic Places for either their association with important persons or events nor for any religious values. Therefore, this statue of Jesus cannot be considered eligible for its association either with the soldiers who fought in WWII nor for its association with Jesus. Any significance and eligibility it may have will be for its association with the ski area and its history in the community.

Big Mountain Ski Resort, now Whitefish Mountain Resort, has had a significant influence on the history of Whitefish playing a significant role in the transition of Whitefish from a town heavily dependent on the lumber industry to a community built around tourism, skiing, and outdoor recreation. However, the ski area has changed a


**Caring for the Land and Serving People**



Printed on Recycled Paper

great deal over the years with new lifts, runs, and facilities and many of the original lifts and runs have been moved or realigned and the ski area as a whole is probably not eligible for listing in the National Register of Historic Places due to a lack of integrity. The statue has integrity of location, setting, materials, workmanship, feeling, and association and is a part of the early history of the ski area and would be considered a contributing element of such a historic district. Individually, it represents a small part of the history of the ski area but since so little remains intact of that early history, the statue of Jesus is probably eligible for listing on the National Register of Historic Places under criteria "a" – associated with events important to local history.

The Special Use Permit to the Knights of Columbus for the shrine is up for renewal and although the permit has been renewed on a regular basis since its issuance in 1953, members of the public have recently raised questions regarding the appropriateness of a religious shrine on lands administered by the US Forest Service. If the permit is not renewed, the Knights of Columbus will be required to remove the statue from FS-administered lands. It would either no longer exist or be re-located to lands not under the administration of the US Forest Service. Moving the statue would be an adverse effect to the integrity of the setting and location and the setting, with its grand views of the valley and proximity to Chair 2, is an important aspect to the site's historic integrity.

We are asking for your concurrence in this determination of eligibility for site 24FH0082 and for the determination of effect for the renewal/non-renewal of the Special Use Permit for the Knights of Columbus. If you have further questions or concerns regarding this project, please contact me at (406) 758-5258.

Sincerely,

TIMOTHY LIGHT
Forest Archaeologist

Enclosures

Received by the Montana SHPO: _____   _____

                                                      Compliance Officer                                     Date

# EXHIBIT 2



*Historic Preservation*
*Museum*
*Outreach & Interpretation*
*Publications*
*Research Center*

September 19, 2011

TIMOTHY LIGHT
FLATHEAD NATIONAL FOREST
650 WOLFPACK WAY
KALISPELL MT 59901

Re: Flathead National Forest, Tally Lake Ranger District: Knights of Columbus Special Use Permit Renewal for the Big Mtn Religious Shrine/Statue of Jesus, Project #11-FH-08-06

Dear Tim,

Thank you for the Cultural Site Record the Big Mountain Statue of Jesus. We agree that the commemorative marker is eligible under criteria A and F. Site 24FH0082 (the Statue) was placed in its current location a few years after the resort was upgraded after World War II.

We think that it has long been a part of the historic identity of the area. It is not believed to be a religious site because unlike Lourdes or Fatima, people do not go there to pray, but it is a local land mark that skiers recognize, and it is a historic part of the resort. Based on this we believe that it is close enough to the third example of an Eligible property description presented in National Register Bulletin # 15 on page 40.

If you have any questions or concerns about what I have written above, you can contact me at (406) 444-0388, or email at jwarhank@mt.gov.

Sincerely,

Josef J Warhank
Review & Compliance Officer

File: USFS/Flathead NF/2011

225 North Roberts Street
P.O. Box 201201
Helena, MT 59620-1201
(406) 444-2694
(406) 444-2696 FAX
montanahistoricalsociety.org

# EXHIBIT 3



| United States Department of Agriculture | Forest Service | Flathead National Forest | 650 Wolfpack Way Kalispell, MT 59901 (406) 758-5200 Fax (406) 758-5367 |
|---|---|---|---|

**File Code:** 1570
**Date:** October 21, 2011

Bill Glidden
Kalispell Council #1328
PO Box 9204
Kalispell, MT 59904

Dear Mr. Glidden,

I am writing to inform you of my decision to withdraw my earlier decision dated August 24, 2011 in order to consider new information. The new information relates to the information I received on September 19, 2011 from the Montana State Historic Preservation Office indicating that the commemorative marker that is the subject of the permit renewal is eligible for the National Historic Register. The Forest plans to formally seek public comment on a proposed action for reissuing the permit in the next few weeks.

If you have any questions about this process please contact me at 758-5251.

Sincerely,

*/s/ Chip Weber/*

CHIP WEBER
Forest Supervisor

cc: Jane L Cottrell



# EXHIBIT 4



# DECISION MEMO

## KNIGHTS OF COLUMBUS SPECIAL USE PERMIT REAUTHORIZATION PROJECT

UNITED STATES DEPARTMENT OF AGRICULTURE
FOREST SERVICE

FLATHEAD NATIONAL FOREST

FLATHEAD COUNTY, MONTANA

JANUARY 31, 2012

## I. INTRODUCTION

This memo documents my decision to reauthorize the Knights of Columbus Special Use Permit. The project is located approximately six miles north of Whitefish, Montana in T32N, R22W, Section 35. Please see Figure 1 at the end of this document for a map of the project area.

## II. PROJECT DESCRIPTION

The proposal is to reauthorize, for a period of ten years, the Knights of Columbus special use permit for a statue of Jesus Christ located on National Forest land near the top of Chair #2 within the Whitefish Mountain Resort permit boundary. No additions or modifications to the permit are proposed.

## III. DECISION

I have decided to reauthorize the Knights of Columbus Special Use Permit as it is described above. The statue has been a long standing object in the community since 1953 and is important to the community for its historical heritage. The proposal is categorically excluded from documentation in an Environmental Impact Statement (EIS) or Environmental Assessment (EA) pursuant to the National Environmental Policy Act (NEPA) and the Procedures for NEPA Compliance in 36 CFR 220.6. The proposed project is authorized under the following category of action for which a Decision Memo and Project Record are required:

> 36 CFR 220.6 (e)(15) _Issuance of a new special use authorization for a new term to replace an existing or expired special use authorization when the only changes are administrative, there are not changes to the authorized facilities or increases in the scope or intensity of authorized activities, and the applicant or holder is in full compliance with the terms and conditions of the special use authorization._

## IV. REASONS FOR CATEGORICALLY EXCLUDING THE DECISION

A proposal may be categorically excluded from further analysis and documentation in an EIS or EA only if there are no extraordinary circumstances related to the proposed action that may result in significant impacts to the human environment (36 CFR 220.6(a)). In unusual circumstances, an action that normally might be categorically excluded may have a significant environmental effect on the quality of the human environment and require an EIS or EA. Resource conditions that should be considered in determining whether extraordinary circumstances related to the proposed action warrant further analysis and documentation in an EA or an EIS are:

a. _Federally listed threatened or endangered species or designated critical habitat, species proposed for Federal listing or proposed critical habitat, or Forest Service sensitive species_

> The Endangered Species Act requires that federal activities do not jeopardize the continued existence of any species federally listed or proposed as threatened or endangered, or result in adverse modification to such species' designated critical habitat. In accordance with Section 7(c) of this Act, a list of the proposed, threatened, or endangered species that may be present in the project area was requested from the U.S. Fish and Wildlife Service and includes the grizzly bear, Canada lynx, bull trout, water howellia, and Spalding's catchfly. As required by this Act, potential effects of this decision on listed species have been analyzed and documented in a Biological Assessment.
>
> The threatened and endangered species Biological Assessments for wildlife, fish, and plants determined the proposal "may affect – not likely to adversely affect" grizzly bear and Canada lynx and "no effect" to bull trout, water howellia, and Spalding's catchfly. The Biological Assessments for these resources are located in the project record.
>
> In accordance with Forest Service Manual 2670.32, a biological evaluation is required to evaluate the effects on sensitive species. Based on the analysis conducted for this Decision Memo, the Biological Evaluation for sensitive wildlife species (located in the project record) indicates this project "may impact individuals, but will not likely result in a trend toward federal listing or reduced viability for the population or species" on four species; boreal (western) toad, fisher, gray wolf, and wolverine. The determination statement for the remaining 10 sensitive wildlife species is "no impact".
>
> The forest botanist evaluated the potential impacts this project will have on sensitive plant species. The Regional Forester's list of sensitive plant species is found in the project record. The project "may impact individuals, but will not likely result in a trend toward federal listing or reduced viability for the population or species" in the "disturbed areas" habitat group.
> A "no effect" determination was made for the remaining sensitive plant species habitat groups. The Biological Evaluation for sensitive plants is included in the project record.
>
> The district fisheries biologist evaluated the potential impacts this project will have on westslope cutthroat trout and western pearlshell mussel. The Biological Evaluation determined the project will have "no impact" to these species. This evaluation is located in the project record. In addi-

tion, the Forest Service in Region 1 is a signatory to the Memorandum of Understanding and Conservation Agreement for westslope cutthroat trout. The Forest Service is responsible for cooperatively implementing the goals and objectives of this agreement within the conservation schedule.

b. *Flood plains, wetlands, or municipal watersheds*

Floodplains: Executive Order 11988 requires that projects avoid adverse impacts associated with the occupancy and modification of floodplains. Floodplains are defined by this order as "the lowland and relatively flat areas adjoining inland and coastal waters, including flood prone areas of offshore islands, including at a minimum, that area subject to a one percent [100-year recurrence] or greater chance of flooding in any one year." The project is not located in or near floodplains as defined in EO 11988.

Wetlands: Executive Order 11990 requires that projects avoid adverse impacts associated with destruction or modification of wetlands. Wetlands are defined by this order as "areas inundated by surface or ground water with a frequency sufficient to support and under normal circumstances does or will support a prevalence of vegetative or aquatic life that requires saturated or seasonally saturated soil conditions for growth and reproduction. Wetlands generally include swamps, marshes, bogs, and similar areas such as sloughs, potholes, wet meadows, river overflows, mud flats, and natural ponds." The project is not located in or near wetlands as defined in EO 11990.

Municipal Watersheds: This project is located near a municipal watershed.
Municipal watersheds are managed under multiple use prescriptions in the Forest Plan. The special use permit area is located on the divide between the Hell Roaring Creek drainage and the First Creek subdrainage of Haskill Creek. First Creek has been used in the past by the City of Whitefish for municipal water supply. Currently, the City does not draw from this creek and does not plan to do so in the future (personal communication, John Wilson, Whitefish City Engineer). Reauthorization of this special use permit will not result in any effects to municipal watersheds (see project record).

c. *Congressionally designated areas, such as wilderness, wilderness study areas, or national recreation areas*

This proposed project is not within or near a congressionally designated area. This decision, with impacts limited to the immediate area of activity, will not affect wilderness areas, wilderness study areas, or national recreation areas.

d. *Inventoried roadless area or potential wilderness area*

There are no inventoried roadless areas (RARE II or Forest Plan) in the project area. This decision will not affect inventoried roadless areas. The project area is designated in the Forest Plan to be managed as a winter sports area and is developed as such under the Big Mountain Ski Area Master Plan. This specified area is not considered to provide wilderness character and has not been included in any recommendations for wilderness designation.

e. *Research natural areas*

There are no Research Natural Areas in the project area. The closest, Le Beau Research Natural Area, is 15 miles northwest of the project. This decision, with impacts limited to the immediate area of activity, will not affect Research Natural Areas.

f. *American Indians and Alaska Native religious or cultural sites*

The Federal government has trust responsibilities to Tribes under a government-to-government relationship to insure that the Tribes reserved treaty rights are protected. Consultation with tribes helps insure that these trust responsibilities are met. The Forest consulted with the Confederated Salish and Kootenai Tribes (see project record).

g. *Archaeological sites, or historic properties or areas*

Section 106 of the National Historic Preservation Act requires federal agencies to take into account the effect of a project on any district, site, building, structure, or object that is included in, or eligible for inclusion in the National Register. Section 106 of the National Historic Preservation Act also requires federal agencies to afford the State Historic Preservation Office and the Advisory Council on Historic Preservation a reasonable opportunity to comment. The Archaeological Resources Protection Act covers the discovery and protection of historic properties (prehistoric and historic) that are excavated or discovered in (on) federal lands. It affords lawful protection of archaeological resources and sites that are on public and Indian lands. The Native American Graves Protection and Repatriation Act covers the discovery and protection of Native American human remains and objects that are excavated or discovered in (on) federal lands. It encourages avoidance of archaeological sites that contain burials or portions of sites that contain graves through "in situ" preservation, but may encompass other actions to preserve these remains and items. This decision complies with the cited Acts. The special use permit reauthorization is an undertaking with no effects to cultural sites. Consultation on this finding occurred with the State Historic Preservation Office (see project record).

The mere presence of one or more of these resource conditions does not preclude use of a categorical exclusion. It is (1) the existence of a cause-effect relationship between a proposed action and the potential effect on these resource conditions and (2) if such a relationship exists, the degree of the potential effect of a proposed action on these resource conditions that determines whether extraordinary circumstances exist. No unusual or extraordinary circumstances were identified in the above resource conditions or were identified through scoping that might result in significant environmental effects.

In addition to the above circumstances, we also considered the potential impacts to these resource concerns:

a. *Steep slopes or highly erodible soils*

There are no areas of steep slopes or highly erodible soils within the special use permit boundary.

### b. *Cavity nesters and old growth habitat*

The wildlife biologist evaluated the potential impacts this project will have on cavity nesters and old growth habitat. Cavity nesting or old growth habitat, as defined by the Western Montana Zone definitions and Amendment 21 of the Flathead National Forest Land and Resource Management Plan, will not be affected as no large vegetation is impacted.

### c. *Impaired Watersheds*

An impaired watershed is classified as containing stream segments identified as not meeting water quality standards on the State of Montana 303(d) list. First Creek, Haskill Creek, and Hell Roaring Creek are not identified on the 2010 Montana Dept. of Environmental Quality 303(d) list as being water quality limited. Please see the watershed section of the project record for a map and the watershed report.

## V. PUBLIC INVOLVEMENT

Notice of this project was first published in the Flathead National Forest Schedule of Proposed Activities (SOPA) in November 2011. Scoping was initiated on November 8, 2011, with a request for comment being placed in the legal notice section of the Daily Inter Lake newspaper briefly describing the project and listing a contact for those wishing additional information. A scoping letter was sent to 97 individuals and organizations that have expressed direct interest in this permit, have expressed interest in projects on Big Mountain in the past, or are considered to potentially have an interest in this project. In addition, a media release was distributed to local, state, and national news outlets.

Public comments were accepted from October 19 to December 8, 2011. During this period, approximately 95,000 public comments were received. All comments were evaluated by the project team. No issues related to resource conditions were brought forth to indicate further analysis and documentation in an EA or EIS was warranted.

Scoping and public involvement documentation is located in the project record.

## VI. FINDINGS REQUIRED BY OTHER LAWS

My decision will comply with all applicable laws and regulations. I have summarized some pertinent ones below.

### *Forest Plan Consistency (National Forest Management Act)*

The Flathead Land and Resource Management Plan (Forest Plan) establishes management direction for the Flathead National Forest. This direction is achieved through the establishment of Forest goals and objectives, standards, and guidelines, and Management Area goals and accompanying standards and guidelines. Project implementation consistent with this direction is the process in which desired conditions described by the Forest Plan are achieved. The National Forest Management Act requires that all resource projects are to be consistent with the Forest Plan (16 USC 1604(i)). This proposal is located within Management Area 20 – Winter Sports Area.

I find that my decision to reauthorize the special use permit is consistent with all Forest Plan goals, standards, and objectives for this management area. Forest Plan direction on special uses is to "(a)llow only those uses of National Forest System land that cannot be reasonably placed on private land". As the statue's historic value and eligibility for listing on the National Register of Historic Places is, in part, directly linked to the current physical location on National Forest land, I have determined that this constitutes a reasonable limitation to placing this statue in a new location on private land.

### National Environmental Policy Act
This Act requires public involvement and consideration of potential environmental effects. The project file contains documentation that supports our determination of compliance with this Act.

### Wild and Scenic Rivers Act
This project does not affect any Wild and Scenic Rivers.

### Clean Water/Air Acts
This project will not affect water quality or air.

### Endangered Species Act (ESA)
According to Section 7 of ESA, each Federal agency must insure that actions it authorizes, funds, or carries out are not likely to jeopardize the continued existence of any threatened or endangered species. Biological assessments were completed for the threatened or endangered species found within the affected area (refer to project record). Based on the findings in these analyses as reported by a wildlife biologist, a fisheries biologist, and a botanist, my decision is in compliance with the ESA.

### National Historic Preservation Act, American Indian Religious Freedom Act, and Native American Graves Protection and Repatriation Act
There will be no effects on those resources/people that are protected under these acts.

### Environmental Justice (Executive Order 12898)
This order requires consideration of whether projects would disproportionately impact minority or low-income populations. This decision complies with this Act. Public involvement occurred for this project, the results of which I have considered in this decision-making. Public involvement did not identify any adversely impacted local minority or low-income populations. I believe my decision is not expected to adversely impact minority or low-income populations.

## VII. IMPLEMENTATION DATE

The forest will reauthorize the expired special use permit following issuance of this decision memo.

## VIII. ADMINISTRATIVE REVIEW OR APPEAL OPPORTUNITIES

While this decision is not subject to administrative appeal under 36 CFR 215, it is subject to appeal by the permit holder pursuant to 36 CFR 251.82. Questions related to the proposal or the appropriateness of excluding the action from further NEPA documentation may be addressed to me.

## IX. CONTACT PERSON

Further information about this decision can be obtained by contacting project leader Derek Milner, Flathead National Forest, 650 Wolfpack Way, Kalispell, MT 59901, (406) 758-5204.

_____
CHIP WEBER
Supervisor – Flathead National Forest

January 31, 2012
Date

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202)720-6382 (TDD). USDA is an equal opportunity provider and employer.

Figure 1. Project Map

