IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., a Wisconsin non-profit Corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>CHIP WEBER, FLATHEAD NATIONAL FOREST SUPERVISOR, and UNITED STATES FOREST SERVICE, an Agency of the United States Department of Agriculture,<br><br>    Defendants,<br><br>  and<br><br>WILLIAM GLIDDEN, RAYMOND LEOPOLD, EUGENE THOMAS, NORMAN DeFORREST, and the KNIGHTS OF COLUMBUS,<br><br>    Defendant-Intervenors. | Cause No. CV12-19-M-DLC |

**PLAINTIFF'S RESPONSE TO AMICUS BRIEF AND
REPLY IN SUPPORT OF ALTERNATIVE MOTION
TO FILE AMENDED COMPLAINT**

  **I.  INTRODUCTION.**

  The intervening defendants and amici incorrectly argue that direct unwelcome contact by declarant William A. Cox with a statue of Jesus Christ, situated on public property, is insufficient to confer standing. The intervenors and amici claim that either forced exposure to the Jesus statue is required for standing, or else active avoidance. The intervenors and amici also contend

that Mr. Cox's reaction to the Jesus statue as a non-believer is not sufficiently "spiritual" for purposes of standing.

Unwelcome contact with a religious display on public land, by a recreational user of the land, does give rise to standing to vindicate the self-executing requirements of the Establishment Clause. The law is clear that in cases of public religious displays unwelcome contact provides a jurisdictional basis for a Court to act. The intervenors and amici argue incorrectly that the "psychological offense" caused by direct contact with religious displays constitutes merely "hurt feelings" that are not actionable. That is not the law, as recognized by the Ninth Circuit, the Supreme Court, and other jurisdictions throughout the country.

The intervenors and the amici ultimately urge the Court to adopt various dissenting judicial opinions which do not represent the prevailing law. As the law currently holds, the offense caused by direct contact with religious displays on public property is sufficient for standing; active avoidance and/or coercion are not required; and a non-believer does not have to suffer some sort of clinically diagnosed religious offense for purposes of standing. In other words, standing exists in the present case.

II. **DIRECT UNWELCOME CONTACT WITH A RELIGIOUS DISPLAY ON PUBLIC PROPERTY PROVIDES JURISDICTION FOR THE COURT TO ENFORCE THE ESTABLISHMENT CLAUSE.**

Counsel for the intervenors and amici incorrectly argue that the offense caused by unwelcome contact with religious displays constitutes merely "hurt feelings," which allegedly do not confer standing. The intervenors and amici rely upon *Valley Forge v. Christian College v. Americans United for Separation of Church and State*, Inc., 454 U.S. 464 (1982), a decision that has consistently been limited to situations not involving direct exposure to religious displays on public property.

In *Vasquez v. Los Angeles County,* 487 F. 3d 1246 (9th Cir. 2007), the Ninth Circuit rejected the arguments now made by the intervenors and amici. The *Vasquez* decision is particularly significant because it involved a religious display on public property.

The Court began its analysis in *Vasquez* by recognizing that the Establishment Clause is primarily aimed at protecting non-economic interests. Id. at 1250, quoting *Suhre v. Haywood County,* 131 F. 3d 1083, 1086 (4th Cir. 1997). The Court described the interest protected by the Establishment Clause in these terms: "The injury that gives standing to plaintiffs in the Establishment Clause context is the injury caused by unwelcome direct contact with a religious display that appears to be endorsed by the State." 487 F. 3d at 1251. The Court in *Vasquez* further explained that direct exposure to a religious display does not constitute "a mere abstract objection," but "perhaps most importantly, [reveals the plaintiff] as someone directly affected by his unwelcome direct contact with the seal." Id. Finally, the Court refused to adopt a rule that affirmative avoidance is a necessary component for Article III standing. Id. at 1250. The Court found *Valley Forge* to be distinguishable, moreover, because the complainants were physically removed in *Valley Forge* from any public religious display. Id. at 1252. In fact, *Valley Forge* was not a religious display case at all.

The Ninth Circuit has consistently held that unwanted direct exposure to public religious displays provides a recognized basis for standing--and the fact that many people may have such exposure does not change the affront into a mere generalized grievance. As the Court recognized in *Newdow v. LeFevre*, 598 F.3d 638, 642 (9th Cir.2010), unwelcome direct contact with an offensive religious symbol is a legally cognizable injury and suffices to confer Article III standing. The fact that such harm may be widely shared does not render it a generalized

3

grievance that cannot be considered by the courts. *Jewel v. National Security Agency,* 673 F. 3d 902, 909 (9th Cir. 2011).

Where direct exposure to a public religious display occurs, even without coercion, the resulting offense provides a basis for standing to sue. Direct exposure to public religious displays has frequently been litigated in the courts, including in the Supreme Court in the following contexts: Prayer at a football game; a crèche in a county courthouse or public park; the Ten Commandments displayed on the grounds of a state capitol or at a courthouse; a cross displayed at a national park; school prayer; a moment of silence at school; bible reading at public school; and a religious invocation at a graduation. See *Catholic League for Religious and Civil Rights v. City and County of San Francisco*, 624 F. 3d 1043, 1049 (9th Cir. 2010).

In the various Supreme Court cases, "no one was made to pray, or to support someone else's church, or limited in how they prayed on their own, or made to worship, or prohibited from worshiping, in any of these [Supreme Court] cases." Id. The Supreme Court, nonetheless, treated standing as sufficient in all of these cases, even though nothing was affected but the religious or irreligious sentiments of the plaintiffs. For example, in *County of Allegheny v. A.C.L.U.* 492 U.S. 573 (1989), the Supreme Court held that a crèche on public property impermissibly gave the appearance of religious endorsement and should be prohibited. Since *Allegheny,* courts have frequently considered the propriety of religious holiday displays in different contexts--and prohibited such displays in many cases. According to the intervenors and amici in the present case, however, the offense caused by such religious holiday displays should not even be actionable in court. Likewise, the Ten Commandments displayed on the grounds of a state capitol apparently should not have been adjudicated by the Supreme Court in *McCreary County v. A.C.L.U. of Kentucky*, 545 U.S. 844 (2005).

While judicial indifference to government religious displays may be the aspiration of the intervenors and amici, it is not compelled by prevailing law. As a matter of legal reality, courts have consistently limited *Valley Forge* to situations where no direct contact occurred with a religious display. As the Ninth Circuit recognized in *Catholic League for Religious Rights* 624 F. 3d at 1053, "in the school prayer and football game cases, nothing bad had happened to the students except a psychological feeling of being excluded. Likewise in the crèche and Ten Commandment cases, nothing happened to the non-christians, or to people who disagreed with the Ten Commandments or their religious basis, except psychological consequences." Nonetheless, the courts are not indifferent to such plaintiffs.

The offense caused by direct exposure to public religious displays, it should be noted, does not require courts to judge whether the individual response is sufficiently religious. Courts obviously cannot engage in the exercise of determining what constitutes a response that is religious enough to invoke the courts' jurisdiction, and courts should not exclude non-believers from objecting to public religious displays merely because they do not have a "religious reaction." As the Court recognized in *Buono v. Norton,* 371 F. 3d 543, 547 (9th Cir. 2004), standing does not depend upon whether the offense caused by direct contact with public religious displays is grounded in ideological or religious beliefs. On the contrary, the Court should not engage in the exercise of evaluating the psychological motives giving rise to such offense based on distinctions that were certainly not recognized by the Supreme Court in *Valley Forge.* Id.

### III.  DIRECT UNWELCOME CONTACT WITH PUBLIC RELIGIOUS DISPLAYS IS THE TEST FOR STANDING APPLIED THROUGHOUT THE UNITED STATES.

The Ninth Circuit test for standing in cases involving public religious displays tracks the test applied throughout the United States at every level of the judiciary. The sufficiency of

direct unwelcome contact as the basis for standing was recently discussed, for example, in *Awad v. Ziriax*, 670 F. 3d 1111, 1122 (10th Cir. 2012).  In *Awad,* the Court recognized that personal contact with a state-sponsored religious image suffices to demonstrate the kind of non-economic direct injury that confers standing. The Court unambiguously concluded that "alleging only personal and unwelcome contact with government-sponsored religious symbols is sufficient to establish standing." Id.

The *Awad* decision and prevailing Ninth Circuit decisions do not represent outlier positions.  In *American Civil Liberties Union of Ohio v. DeWeese*, 433 F. 3d 424, 429 (6th Cir. 2011), for example, the Court also recognized that "in suits brought under the Establishment Clause, direct and unwelcome contact with the contested object demonstrates psychological injury and facts sufficient to confer standing." See  also *American Civil Liberties Union of Kentucky v. Grayson County, Kentucky,* 591 F. 3d 837, 843 (6th Cir. 2010) ("Under the Establishment Clause, a plaintiff may demonstrate an injury by showing direct and unwelcome contact with a government-sponsored religious object."); *American Atheists Inc., v. Duncan* 637 F. 3d 1095, 1113 (10th Cir. 2010) (Direct personal and unwelcome contact with crosses on public land established standing); *Freedom From Religion Foundation v. City of Warren*, 2012 U.S. Dist. LEXIS 75464 at 10(E. D. MI 2012) ("Psychological injuries are sufficient to confer standing on an individual when a plaintiff can show direct and unwelcome contact with the object at issue or an alteration of the individual's conduct); and *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012) (direct and unwelcome personal contact with religious monument is a sufficient injury for standing purposes without altered behavior to  avoid the allegedly unconstitutional display).

The direct and unwelcome contact test for standing is not novel or new. This test has been implicitly applied by the Supreme Court and other courts since at least Supreme Court's decision in *Allegheny County*. As the Court of Appeals recognized in *A.C.L.U. of Nebraska v. City of Plattsmouth, Nebraska*, 358 F. 3d 1020, 1029 (8th Cir. 2004), "by far the prevailing view [of standing] requires only direct and unwelcome personal contact with the alleged establishment of religion."

The intervenors and amici misapprehend the Establishment Clause in voicing their disagreement with the prevailing test for standing. They complain that such a test gives persons who are exposed to government speech endorsing religion an unfair a "heckler's veto." Cases involving government expression, however, consistently recognize a constitutional difference between government speech and private speech. "There is a crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and private speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." *Capitol Square Review and Advisory Board V. Pinette*, 515 U.S. 753, 765-766 (1995), quoting *Board of Education v. West Side Community Schools Dist. 66 v. Mergens,* 496 U.S. 226, 250 (1990)(opinion of O'Connor, J.). In *Santa Fe Independent School Dist. V. Doe,* 530 U.S. 290, 302 (2002), the Supreme Court reiterated that the Establishment Clause forbids government speech endorsing religion, and the Supreme Court continues to recognize the distinction between government speech endorsing religion--and other government speech. See *Pleasant Grove v. Summum*, 555 U.S. 460 (2009)(although the Free Speech Clause of the First Amendment does not apply to government speech, this "does not mean that there are no restraints on government speech. For example, government speech must comport with the Establishment Clause.").

The offense from public religious displays is caused by the appearance of endorsement, moreover, rather than the requirement of any coercion.  The Supreme Court has consistently recognized that a violation of the Establishment Clause is not predicated on coercion, a point that the Court refused to reconsider in *Allegheny County,* 492 U.S. at 597 n. 47.  In *Allegheny*, the Court expressly re-affirmed its prior holdings and proceeded "to apply the controlling endorsement inquiry, which does not require an independent showing of coercion."

More recent decisions by the Supreme Court also have not required legal coercion as a necessary element of standing.  For example, in *McCreary County*, 545 U.S. 844 (2005), the Court held that a Ten Commandments display impermissibly violated the Establishment Clause, despite the absence of any coercion.  In *Van Orden v. Perry*, 545 U.S. 677, 693 (2005) (Thomas, J., concurring),  Justice Thomas vainly urged the Court to adopt coercion as the applicable test under the Establishment Clause, which is a test that Justice Thomas considers preferable to the "approaches this Court now uses."  The Supreme Court, however, has never adopted or applied Justice Thomas' coercion test.

Recognizing that government speech endorsing religion violates the Establishment Clause, the prevailing test for standing in such cases is logical and reasonable.  It makes sense that persons who have direct and unwelcome exposure to government speech endorsing religion, including the speech implicit in public religious displays, are appropriate parties to press the issue in court.  Here, FFRF's member William A. Cox, for one, is clearly an individual with standing in his own right and as a member of FFRF.

## IV. DIRECT UNWELCOME CONTACT WITH A RELIGIOUS DISPLAY ON PUBLIC PROPERTY IS DISTINGUISHABLE FROM THE INFORMATIONAL WEBSITE AT ISSUE CALDWELL.

The intervenors and amici rely unpersuasively on the decision in *Caldwell v. Caldwell*, 545 F. 3d 1126 (9th Cir. 2008), as supposedly the closest analogous case to this one. The plaintiff in *Caldwell* complained that an informational website for educators included material that allegedly endorsed religion. The Court concluded, however, that plaintiff's situation "does not fit neatly into a place already staked out along the continuum of Establishment Clause standing." Id. at 1133. According to the Court, the plaintiff was neither so removed from the challenged conduct as the plaintiffs in *Valley Forge*, nor so close as the plaintiff in *Vasquez*. "Her connection to the writing on the website is more tenuous than Buono's to the Preserve where the offending symbol was a Latin cross that was permanently installed on a top of a hill." Id.

In describing the continuum of Establishment Clause standing, the Court in *Buono* acknowledged the general rule "that unwelcome direct contact with an allegedly offensive religious or anti-religious symbol suffices for Article III standing." Id. The Court concluded, however, that the plaintiff's objection to an educational website constituted "an abstract objection to how the University's website presents the subject," i.e., an invitation for the court to become "a judicial version of a college debating forum." Id.

The present case, unlike *Caldwell*, involves direct unwelcome contact with a religious display on public land, which fits on the standing continuum with religious monuments. Mr. Cox has stated, in a formal declaration, that he has frequent direct and unwelcome contact with a statue of Jesus Christ located on public land belonging to the United States government. His situation presents the quintessential case where direct unwelcome contact with a religious display

is consistently deemed sufficient for standing purposes. This rule of standing, moreover, is not repudiated in *Caldwell;* it is acknowledged.

The Court found no standing in *Caldwell* because the plaintiff had no unwelcome direct contact with a religious monument. The plaintiff's objection to the content of an informational website in *Caldwell* was instead held to be distinguishable from the general rule. In fact, the plaintiff's objection in *Caldwell* raised an issue of academic freedom, a matter in which courts are particularly reluctant to involve themselves. As the Court stated in *C.F. v. Corbett*, 654 F. 3d 975, 997-998 (9th Cir. 2011), "the Supreme Court has long recognized the importance of protecting the robust exchange of ideas in education, which discovers truth out of a multitude of tongues."

The intervenors and amici, in the end, badly misapprehend the *Caldwell* decision. They unpersuasively equate a permanent statue of Jesus to the informational website at issue in *Caldwell*. In fact, the present case is indistinguishable from the cross cases in which the Ninth Circuit, the Supreme Court, and other courts throughout the country, have consistently determined that unwelcome direct contact with such a religious display on public land does give rise to standing.

V. **ALTHOUGH FFRF'S INDIVIDUAL MEMBERS ARE NOT REQUIRED TO BE NAMED AS PARTIES, FFRF'S AMENDED COMPLAINT SHOULD BE ALLOWED TO AVOID UNCERTAINTY.**

The declaration of Mr. Cox makes clear that FFRF has members who would otherwise have individual standing in their own right. The Cox declaration, therefore, is by itself sufficient to establish the associational standing of FFRF in this case where no individualized relief is sought. As the Court again recently recognized in *Red River Freethinkers,* 679 F. 3d at 1022, when the primary relief sought is the removal of a monument, the individual participation of

each injured party is not indispensable to proper resolution of the cause. "If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy if granted, will inure to the benefit of those members of the association actually injured." Id, quoting *Warth v. Seldin* 422 U.S. 490, 511 (1975).

If the Court prefers, however, that an individual FFRF member be named as a plaintiff, then FFRF's Amended Complaint should be allowed with the addition of Mr. Cox as a party. The intervenors themselves all but acknowledge that a proper resolution in a situation like this would be to allow amendment, or at least the filing of a new complaint with a named individual plaintiff. (Docket 49 at 10.) Because Mr. Cox is an FFRF member, moreover, his standing is sufficient to also support associational standing.

The intervenors misread *Moss v. Spartanburg County School District Seven,* 683 F. 3d 599 (4th Cir. 2012), for the proposition that only individual plaintiffs may be named in an "offended observer" case. In *Moss*, the Court concluded that an individually named plaintiff, who was a member of FFRF, lacked standing, and therefore, FFRF also lacked associational standing. The Court further found, however, that another named individual plaintiff, who was not a member of FFRF, did have standing. The *Moss* case accordingly proceeded with only the non-FFRF individual as plaintiff. The *Moss* decision is distinguishable, however, because the individual with standing was not a FFRF member. Here, by contrast, Mr. Cox is an FFRF member--and he clearly does have standing.

## VI.     CONCLUSION

For all the above reasons, the Intervenor's motion to dismiss should be denied and/or FFRF's Motion to File Amended Complaint should be granted.

Dated this 7th day of September 2012.

                                  Martin S. King, Esq.
                                  Worden Thane P.C.
                                  111 North Higgins, Suite 600
                                  P.O. Box 4747
                                  Missoula, MT 59806
                                  Telephone:  (406) 721-3400
                                  Facsimile:  (406) 721-6985
                                  E-Mail:

                                  */s/ Richard L. Bolton*
                                  Richard L. Bolton, Esq.
                                  Boardman & Clark LLP
                                  1 South Pinckney Street, 4th Floor
                                  Madison, WI  53701-0927
                                  Telephone:  (608) 257-9521
                                  Facsimile:  (608) 283-1709
                                  E-Mail:  rbolton@boardmanclark.com
                                  Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE WITH CIVIL LOCAL RULE 7.1 (d)(2)

I hereby certify that the foregoing consolidated Reply and Response Brief contains 3,103 words, excluding the caption page and certificates, but including the signature block.

*/s/ Richard L. Bolton*
Richard L. Bolton, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2012, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification electronically to all attorneys of record.

/s/Richard L. Bolton
Richard L. Bolton

F:\DOCS\WD\26318\31\A1486972.DOCX