# UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
### MISSOULA DIVISION

| | | |
|---|---|---|
| **FREEDOM FROM RELIGION FOUNDATION, INC.,** a Wisconsin Non-Profit Corporation, | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. CV 12-19-M-DLC** |
| **CHIP WEBER, Flathead National Forest Supervisor,** | ) ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **UNITED STATES FOREST SERVICE,** an Agency of the United States Department of Agriculture, | ) ) ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **WILLIAM GLIDDEN, RAYMOND LEOPOLD, NORMAN DEFOREST, EUGENE THOMAS, and the KNIGHTS OF COLUMBUS** (Kalispell Council No. 1328), | ) ) ) ) ) | **Hon. Dana L. Christensen** |
| | ) | |
| **Intervenor-Defendants.** | ) | |

## PLAINTIFF'S RESPONSES TO FEDERAL DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

<u>NUMBER</u>                                                     <u>STATEMENT</u>

1.  The Forest Service issued a Special Use Permit to the Knights of Columbus in 1953, in response to their request for permission to erect a privately owned and maintained statue of Jesus as a "shrine," to be located on a privately operated ski resort on the Flathead National Forest, now called the Whitefish Mountain Resort ("Resort")

    **<u>RESPONSE</u>**:      Dispute that the Shrine is located on land that is actively operated by Resort,  *See* Proposed Findings Nos. 5 and 21 by Federal Defendants.

2.  Pursuant to the 1953 Special Use Permit, the Knights of Columbus erected a statue of Jesus Christ in 1954.

    **<u>RESPONSE</u>**:      No dispute.

3.  The 6-ft tall statue was originally located 400 feet beyond the upper terminus of what was then the main T-bar lift of the Resort and 70 feet higher in elevation.

    **<u>RESPONSE</u>**:      No dispute.

4.  Once the new Chair One was built in 1960, skiers had access to much higher skiing terrain on another area of the mountain.

    **<u>RESPONSE</u>**:      No dispute.

5.  In 1968, a second chairlift (Chair Two) was built to replace the old T-bar lift; that lift dropped skiers off in an area above the statue. The statue is off to the side of the run served by Chair Two. No hiking trails directly lead to the statue, which is located behind a copse of trees, and people ordinarily would not have occasion to see the statue in the summer. The statue is not advertised by the Resort as an attraction or feature of interest.

    **RESPONSE**:       No dispute.

6.  The Special Use Permit was renewed in 1990 and 2000 for ten-year terms.

    **RESPONSE**:       No dispute.

7.  The Knights of Columbus sought renewal of the Special Use Permit in 2010, which was initially denied by the Forest Service on August 24, 2011.

    **RESPONSE**:       No dispute.

8.  On October 21, 2011, the Forest Service withdrew its earlier denial and issued a public notice soliciting comment on a formal proposal for reissuance of the Permit.

    **RESPONSE**:       No dispute.

9.  In response to its solicitation for comments, the Forest Service received approximately 95,000 comments from October 19 to December 8, 2011.

    **RESPONSE**:       No dispute.

10.   On January 31, 2012, the Forest Service issued a new decision to
reauthorize the Special Use Permit for a term of ten years.

**RESPONSE**:        No dispute.

11.   In its January 31, 2012 Decision Memo, the Forest Service noted that the
statue "has been a long standing object in the community since 1953 and is
important to the community for its historical heritage."

**RESPONSE**:   No dispute that decision so states, but do not concede the
truth of the matter stated.

12.   The Cultural Resource Summary prepared in connection with the Special
Use Permit renewal explains that the statue's "primary historical value is its
association with the early development of the Big Mountain ski area, now
Whitefish Mountain Resort. It is a contributing (and minor) piece of
the ski hill's overall socio-cultural, economic, and technological history."

**RESPONSE**:   No dispute that the Summary so states, but do not concede
the truth of the matter stated.

13.   In a September 19, 2011 letter to the Forest Service, the Montana State
Historic Preservation Officer ("SHPO") concurred that the statue "has long
been a part of the historic identity of the area" and that "it is a local land
mark that skiers recognize, and it is a historic part of the resort."

**RESPONSE**:   No dispute that the SHPO letter so states but do not concede the truth of the matter stated.

14.  The Heritage Resource Inventory Report, completed on December 15, 2011, describes how the "Big Mountain Ski Resort, now Whitefish Mountain Resort, has had a significant influence on the history of Whitefish playing a significant role in the transition of Whitefish from a town heavily dependent on the lumber industry to a community built around tourism, skiing, and outdoor recreation." But, "the ski area has changed a great deal over the years with new lifts, runs, and facilities and many of the original lifts and runs have been moved or realigned and the ski area as a whole is probably not eligible for listing in the National Register of Historic Places due to a lack of integrity." However, "[t]he statue has integrity of location, setting, materials, workmanship, feeling, and association and is a part of the early history of the ski area and would be considered a contributing element of such a historic district.

Individually, it represents a small part of the history of the ski area but since so little remains intact of that early history, the statue of Jesus has been determined eligible for listing on the National Register of Historic Places under criteria 'a' — associated with events important to local history and criteria consideration 'f.'"

**RESPONSE**:   No dispute that the Report so states, but do not concede the truth of the matters stated.

15. Religious observances have often been held elsewhere on the mountain when they occur. The statue has not been advertised as a place of religious worship.

**RESPONSE**:   Dispute that religious observances have not been held at the Jesus Statue.   (Plaintiff's Statement of Disputed Facts, No 67, 74.

16. The statue has been used by a variety of civic and religious groups, including the Boy Scouts, church youth groups, and the veterans' associations, for private affairs, including weddings and scatterings of ashes, and some of which have included prayer.

**RESPONSE**:   No dispute.

17. In the past, some prayer services have been held at the statue at various times. One pastor who conducted such services in 1999 or 2000 discontinued them because of poor attendance and bad weather; two others conducted services elsewhere on the mountain.

**RESPONSE**:   No dispute.

18. While the statue has been the location of sporadic, private religious devotion, it has more commonly served as a convenient rendezvous point,

site for photo opportunities, and occasion for merrymaking. Visitors have often treated the statue with an attitude of irreverence, adorning it with ski gear, ties, necklaces, and gloves, or "high-fiving" it or striking as they ski by. Such secular uses, in fact, predominate over any religious uses of the statue and its site.

**RESPONSE**:   No dispute that site of Jesus Statue has been used for religious services.   Dispute the remaining conclusions. (Plaintiff's Statement of Disputed Facts., Nos. 118, 122).

19. The statue has long been part of the fiber of the Big Mountain Resort, as a matter of historic, not religious identity. Many individuals have fond memories of the statue as a historic landmark, a meeting place, or spot marking a beautiful vista.

**RESPONSE**:   Dispute.  (Plaintiff's Statement of Disputed Facts., Nos. 106, 115, 116, 123, 126, 127, 67, 72, 74, 84, 91, 73, 88, 90, 97).

20. Despite the fact that the statue has stood in its present location since 1954 — and for all but seven years of the Resort's life — no one has complained about it until the present litigation.

**RESPONSE**:   Dispute that persons previously exposed to the Statue have not been offended.  (Plaintiff's Statement of Disputed Facts., Nos. 156, 168).

21.  In 2010, prior to instigation of this litigation, the Resort installed a plaque at the base of the statue plainly indicating that the statue was a privately erected and maintained memorial. The plaque reads in its entirety:

> When the troops started returning from WWII in Europe to their home in the Flathead Valley they brought with them many memories . . . some good, some bad. Some of these troops were members of the Knights of Columbus at St. Matthew's parish in Kalispell.
>
> A common memory of their time in Italy and along the French and Swiss border was of the many religious shrines and statues in the mountain communities. This started a dialogue with the U.S. Forest Service for leased land to place this statue of Jesus. On October 15, 1953 the U.S. Forest Service granted a permanent special use permit to the KofC Council #1328 for a 25ft x 25ft square for placement of the statue. A commission for the statue construction was given to St. Paul Statuary in St. Paul, Minnesota. The statue was installed in 1955 and has been maintained by the Knights of Columbus from St. Matthew's ever since. We thank those brave troops that brought this special shrine of Christ to the Big Mountain and hope that you enjoy and respect it.
>
> ~ Whitefish Mountain Resort, 2010

**RESPONSE**:    No dispute that the plaque was recently placed, but dispute that the plaque suggests that the Jesus Statue is not permanently sited on U.S. Forest Service land.

Dated this 13th day of February, 2013.              **BOARDMAN & CLARK LLP**

By:    */s/ Richard L. Bolton*
Richard L. Bolton, *Pro Hac Vice*
*rbolton@boardmanclark.com*
Boardman and Clark, LLP
1 S. Pinckney St., Ste 410
Madison, Wisconsin 53703-4256
Telephone: 608-257-9521
Facsimile: 608-283-1709

Martin S. King
*mking@wordenthane.com*
Reid Perkins
*rperkins@wordenthane.com*
P.O. Box 4747
Missoula, MT 59806-4747
Telephone: 406-721-3400
Facsimile: 406-721-6985

Attorneys for Plaintiff, Freedom From Religious Foundation, Inc.

Notice of Electronic Filing and Service

I hereby certify that on February 13, 2013, this document was filed electronically in accordance with the ECF procedures of the United States District Court, District of Montana, Missoula Division, under Rule 5(d)(1), Federal Rules of Civil Procedure and L.R. 1.4(c).  All parties who are represented and have consented to service of electronically filed documents are served upon receipt of the NEF from the electronic filing system.

To the best of my knowledge, there are no parties in this case that require service by means other than electronic service using the Court's NEF.  The original document on file with the filing party contains a valid original signature.

F:\DOCS\WD\26318\31\A1592528.DOCX  [plaintiff FFRF response to fed defs' undisputed facts (summary judgment) ]