**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 31 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., a Wisconsin non-profit corporation,<br><br>        Plaintiff - Appellant,<br><br>v.<br><br>CHIP WEBER, Flathead National Forest Supervisor and UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture,<br><br>        Defendants - Appellees,<br><br>WILLIAM R. GLIDDEN; et al.,<br><br>        Intervenor-Defendants - Appellees. | No. 13-35770<br><br>D.C. No. 9:12-cv-00019-DLC<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief District Judge, Presiding

Argued and Submitted July 7, 2015
Portland, Oregon

---

      [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: PREGERSON, N.R. SMITH, and OWENS, Circuit Judges.

Freedom From Religion Foundation, Inc. ("FFRF") appeals from the district court's award of summary judgment to the United States Forest Service ("USFS") and Knights of Columbus ("Knights"). The district court held that the government's continued authorization of a Jesus Christ statue located on national forest land did not violate the Establishment Clause. Because the parties are familiar with the facts, we do not recount them except as necessary. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.[1]

FFRF satisfied the three organizational standing requirements. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). First, FFRF-member Pamela Morris would be able to sue in her own right; she "made a conscious effort to avoid Big Mountain because of the Jesus Statue," which she found "intrusive" and "out of place." *See Hewitt v. Joyner*, 940 F.2d 1561, 1564 (9th Cir. 1991) (standing to contest religious displays where displays curtailed plaintiffs' use of park); *Buono v. Norton*, 371 F.3d 543, 546-48 (9th Cir. 2004) (alleged injury was sufficient where plaintiff was "unable to 'freely us[e]' the area

---

[1] We review de novo the district court's decisions regarding standing and summary judgment. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1087 (9th Cir. 2010).

2

of the Preserve around the cross" (alteration in original)).  Second, the interests FFRF sought to protect were germane to the organization's purpose.  *See Hunt*, 432 U.S. at 343.  And third, because FFRF requested declaratory and injunctive relief, not money damages, the Establishment Clause claim and the relief sought did not necessitate individual member participation.  *See Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001).

As to the merits, the government's continued authorization of the statue on federal land does not violate the Establishment Clause.[2]

First, USFS's decision to renew the statue's permit reflected a primarily secular purpose.  *Trunk v. City of San Diego*, 629 F.3d 1099, 1107 (9th Cir. 2011) ("[W]e first inquire as to the purpose of the government action to determine whether it is predominantly secular in nature.").  The government identified secular rationales for its continued authorization including the statue's cultural and historical significance for veterans, Montanans, and tourists; the statue's inclusion in the National Register of Historic Places; and the government's intent to preserve the site "as a historic part of the resort."  *See Access Fund v. U.S. Dep't of Agric.*, 499 F.3d 1036, 1043 (9th Cir. 2007) (site's inclusion in the National Register of

---

[2] Our analysis assumes, without deciding, that USFS's continued authorization of the statue on public land constitutes government action.

Historical Places evinces Forest Service's secular motivations—"the preservation of a historic cultural area"); *Kreisner v. City of San Diego*, 1 F.3d 775, 782 (9th Cir. 1993) ("A reviewing court must be 'reluctant to attribute unconstitutional motives' to government actors in the face of a plausible secular purpose.").

Although the dissent focuses on the monument's appearance, that the statue is of a religious figure, and that some of the initial impetus for the statue's placement was religiously motivated, does not end the matter. *See Van Orden v. Perry*, 545 U.S. 677, 699 (2005) (Breyer, J., concurring in the judgment) ("[T]he Establishment Clause does not compel the government to purge from the public sphere all that in any way partakes of the religious."). USFS's "intent is the key here, and nothing apart from the [statue's likeness] suggests a religious motive on [USFS's] part." *See Card v. City of Everett*, 520 F.3d 1009, 1019-20 (9th Cir. 2008); *Access Fund*, 499 F.3d at 1044.

Second, USFS's permit authorization did not constitute an endorsement of religion. *See Trunk*, 629 F.3d at 1107, 1109-10. Our determination is based on the following: (1) there is nothing in the statue's display or setting to suggest government endorsement; the twelve-foot tall statue is on a mountain, far from any government seat or building, near a commercial ski resort, and accessible only to individuals who pay to use the ski lift; (2) the statue's plaque communicates that it

4

is privately owned and maintained—"it did not sprout from the minds of [government] officials and was not funded from [the government's] coffers," *see Card*, 520 F.3d at 1020; (3) besides the statue's likeness, there is nothing in the display or setting to suggest a religious message. The mountain's role as a summer and winter tourist destination used for skiing, hiking, biking, berry-picking, and site-seeing suggests a secular context; the location "does not readily lend itself to meditation or any other religious activity," and the setting "suggests little or nothing of the sacred," *Van Orden*, 545 U.S. at 702 (Breyer, J., concurring in the judgment); *see also Card*, 520 F.3d at 1020; (4) the flippant interactions of locals and tourists with the statue suggest secular perceptions and uses: decorating it in mardi gras beads, adorning it in ski gear, taking pictures with it, high-fiving it as they ski by, and posing in Facebook pictures; (5) local residents commonly perceived the statue as a meeting place, local landmark, and important aspect of the mountain's history as a ski area and tourist destination; and, (6) there is an absence of complaints throughout its sixty-year history, *see Van Orden*, 545 U.S. at 702 (Breyer, J., concurring in the judgment) (reasoning that the monument's forty-year unchallenged history "suggest[s] more strongly than can any set of formulaic tests that few individuals . . . are likely to have understood the monument as amounting . . . to a government effort to favor a particular religious sect, . . . to 'compel' any

5

'religious practic[e],' or to 'work deterrence' of any 'religious belief'" (alterations in original)).

Finally, the facts of this case are not commensurate with *Trunk*'s facts: (1) the forty-three foot tall cross in *Trunk* was "visible from miles away and tower[ed] over the thousands of drivers who travel[ed] daily on Interstate 5," 629 F.3d at 1103; (2) the cross's plaque, identifying it as a war memorial, was added only after litigation began, *id.* at 1101, 1119; (3) for the majority of its history, the cross was not, in fact, a war memorial, but a religious symbol and a place where Easter services continued for more than forty years, *id.* at 1119-20; (4) the memorial's location "in the heart of a largely homogenous and exclusionary community" had a "history of anti-Semitism that reinforce[d] the Memorial's sectarian effect," *id.* at 1121-22; and, (5) at least for the last two decades, the cross had "become a flashpoint of secular and religious divisiveness," and "heated litigation," *id*. at 1122.

Appellant shall bear all costs on appeal.

**AFFIRMED**.

6